10-1266-cr (L)
US v. Wells & Rhodes

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2010

(Submitted: February 25, 2011      Decided: April 28, 2011)

————————————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

KIRBY GRAY, KRYSTAL MACK,

*Defendants*,

MARVIN WELLS, STEPHEN RHODES,

*Defendants-Appellants*.

Docket Nos. 10-1266-cr (L), 10-1284-cr (con)

————————————————————————————

B e f o r e :  KEARSE, SACK, KATZMANN, *Circuit Judges*.

————————

Appeal from judgments of the United States District Court for the Eastern District of New York (Weinstein, *J.*), entered on April 1, 2010, following a jury trial, convicting Defendant-Appellant Marvin Wells of conspiracy to obstruct justice, obstruction of justice, two counts of attempted intimidation and corrupt persuasion, and making a false statement, and convicting Defendant-Appellant Stephen Rhodes of obstruction of justice and making a false statement. We hold that an internal investigation by a privately owned prison that houses federal prisoners of an allegation of excessive force involves a "matter within the jurisdiction" of the Department of Justice for purposes of 18 U.S.C. § 1519. For the reasons stated below and in the accompanying summary order, the judgments of the district court are **AFFIRMED**.

Licha M. Nyiendo, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, *of counsel*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *for Appellee*.

Michael H. Soroka, Law Offices of Michael H. Soroka, Esq., Mineola, N.Y., *for Defendant-Appellant Marvin Wells*.

Mitchell A. Golub, Golub & Golub, LLP, New York, N.Y., *for Defendant-Appellant Stephen Rhodes*.

KATZMANN, *Circuit Judge*:

Defendants-Appellants Marvin Wells and Stephen Rhodes (collectively, the "defendants") appeal from judgments of the United States District Court for the Eastern District of New York (Weinstein, *J.*), entered on April 1, 2010, following a jury trial, convicting Wells of conspiracy to obstruct justice, in violation of 18 U.S.C. § 371; obstruction of justice, in violation of 18 U.S.C. § 1519; two counts of attempted intimidation and corrupt persuasion, in violation of 18 U.S.C. § 1512(b)(3); and making a false statement, in violation of 18 U.S.C. § 1001(a)(2); and convicting Rhodes of obstruction of justice, in violation of 18 U.S.C. § 1519; and making a false statement, in violation of 18 U.S.C. § 1001(a)(2). This appeal calls upon us to decide whether an internal investigation by a privately owned prison that houses federal prisoners of an allegation of excessive force involves a "matter within the jurisdiction" of the Department of Justice ("DOJ") for purposes of 18 U.S.C. § 1519.[1] As set forth below, we hold that it does, and

_____

[1] In an accompanying summary order, we address and reject Wells's additional arguments that (1) his corrupt persuasion and false statement convictions were not supported by sufficient evidence and (2) his conspiracy to obstruct justice conviction is infirm as a matter of

accordingly affirm Wells's and Rhodes's convictions on the obstruction-of-justice counts. For the reasons stated herein and in the accompanying summary order, the judgments of the district court are **AFFIRMED**.

## BACKGROUND

The facts of this case are largely undisputed. The evidence at trial revealed that, on the morning of April 17, 2007, Rex Eguridu, a federal inmate housed at Queens Private Correctional Facility ("QPCF"),[2] called out to Krystal Mack, a QPCF corrections officer ("CO"): "Hello baby. You look beautiful today." App'x 219. Wells, a supervising lieutenant at QPCF, approached Eguridu and directed Rhodes, a CO, to handcuff Eguridu. When Eguridu apologized for his remark, Wells told him "to keep [his] mouth shut." *Id.* at 220. Wells thereafter instructed Rhodes and Kirby Gray, another CO, to take Eguridu to a shower room and remove his handcuffs.

Once in the shower room, Wells directed Eguridu to remove his clothes. After Eguridu was strip-searched, Wells angrily questioned Eguridu why he would call an officer "baby," and repeatedly struck Eguridu in the chest and throat. Each blow caused Eguridu's head to strike against the concrete wall of the shower room. Gray, Rhodes, and Hananiah Day, another CO, were present in the shower room and witnessed the event. Leslie Andrews, another CO, saw

---

law, and Rhodes's additional argument that the evidence was insufficient to convict him of obstruction of justice and making a false statement on the ground that the jury rendered an inconsistent verdict. In that order, we address also the defendants' contention that the district court erred in permitting the government to introduce into evidence certain of the policies and regulations of their employer.

[2] QPCF became known as Queens Private Detention Facility in or around October 2007.

Wells strike Eguridu and heard Eguridu's head "thump" against the wall repeatedly as she passed by the shower room.

After the attack concluded, Wells ordered Eguridu to get onto his knees and apologize. Eguridu complied, and Wells instructed Gray and Rhodes to take Eguridu back to his cell. As they were leaving, Wells told Eguridu, "if I hear one word about this I'll fuckin' kill you. We'll come down there, I'll drag you out and I'll kill you." *Id.* at 344.

Following the assault, Eguridu felt pain in his chest and throat. A medical examination revealed that Eguridu had a deviation of the throat with swelling of his neck, difficulty moving his neck and shoulders, and a bruise on his sternum. Two days later, he was transferred to the Metropolitan Detention Center in Brooklyn.

Almost immediately thereafter, QPCF, a privately owned detention center operated by The GEO Group, initiated an investigation of the incident. QPCF's administrative lieutenant, William Robinson, directed the officers to write reports to QPCF describing what they had observed. Wells wrote one report, Rhodes and Gray each wrote two reports, and Mack wrote four reports. Each of those reports stated, in sum and substance, that no force had been used against Eguridu and no assault had taken place.

Andrews testified that before she wrote her first report, Wells told her: "I should just put down I don't know what happened. I didn't see anything." *Id.* at 267. Similarly, Mack advised Andrews: "we all have to stick together. We have to say the same thing. This is how we do it . . . . You are the weakest link." *Id.* at 271. Andrews, who wrote five separate reports of the incident, testified that she was not truthful in her first four reports because she was afraid that other officers would retaliate against her. She nevertheless decided to write in her fifth report the truth about what she had observed in the shower room.

Day testified that on the afternoon of April 17, the same day as the incident, Wells called him and one other officer into Wells's office.[3] Wells advised them that they were required to write reports about the incident and instructed them to state that no force had been used against Eguridu. Wells stated also that he would speak with the other officers and "make sure that they wrote that they didn't witness any use of force." *Id.* at 348. Day testified that he wrote a false report to QPCF at Wells's direction. After Day submitted his report, Wells told him to "stick with it. They may ask you for another report. They've already asked Andrews for an addendum." *Id.* at 350. Day, however, later informed the administrative lieutenant that he had submitted a false report, and he submitted a second report that accurately described what he had observed.

Several months later, the matter was referred to the Office of the Inspector General ("OIG"), the investigative unit of the DOJ, which commenced a federal investigation. Mary Chiu-Vaccariello, an OIG case agent, interviewed Wells and Rhodes separately in early 2008. She advised them that the interview would be voluntary and that they could face charges for being untruthful.

In his February 26, 2008 interview with Chiu-Vaccariello, Rhodes stated that he did not see Wells strike Eguridu. He acknowledged that "an incident had occurred between [Wells] and . . . Eguridu, but he really didn't know the substance of the incident." *Id.* at 432. Wells stated in his April 1, 2008 interview that he directed Rhodes and Gray to take Eguridu to the shower room and perform a strip search and then ordered Eguridu to apologize to Mack. He denied striking Eguridu, threatening to kill him, and directing COs how to write their reports. Wells and Rhodes affirmed to Chiu-Vaccariello that their written reports to QPCF were truthful and accurate.

---

[3] Day recalled that the other officer was either Rhodes or Gray.

On November 12, 2008, a grand jury returned an indictment against Wells, Rhodes, Gray, and Mack. The indictment alleged (1) as to Wells, deprivation of civil rights by the use of excessive force on Eguridu, in violation of 18 U.S.C. § 242; (2) as to Wells, Rhodes, and Gray, conspiracy to obstruct justice by filing false reports, in violation of 18 U.S.C. § 371; (3) as to Wells, Rhodes, and Gray, obstruction of justice by filing false reports, in violation of 18 U.S.C. § 1519; (4) as to Wells, Rhodes, and Mack, conspiracy to corruptly persuade Andrews, in violation of 18 U.S.C. § 1512(k); (5) as to Wells, attempted intimidation and corrupt persuasion of Andrews, in violation of 18 U.S.C. § 1512(b)(3); (6) as to Wells, attempted intimidation and corrupt persuasion of Day, in violation of 18 U.S.C. § 1512(b)(3); (7) as to Rhodes and Mack, attempted corrupt persuasion of Andrews, in violation of 18 U.S.C. § 1512(b)(3); and (8) as to Rhodes, Gray, and Wells, making false statements, in violation of 18 U.S.C. § 1001(a)(2).

Following a jury trial, Wells was convicted of five counts: conspiracy to obstruct justice, obstruction of justice, two counts of attempted intimidation and corrupt persuasion, and making a false statement. Rhodes was convicted of two counts: obstruction of justice and making a false statement. The district court sentenced Wells to one year and one day of incarceration and three years of supervised release. It sentenced Rhodes to three years of probation. This appeal followed.

**DISCUSSION**

On appeal, Wells and Rhodes challenge their convictions for obstruction of justice under 18 U.S.C. § 1519, which, in relevant part, requires proof of conduct intended to obstruct the investigation or proper administration of a matter within the jurisdiction of a federal agency.

They argue that the government did not prove that their filing of false reports was intended to impede or influence the investigation or proper administration of a matter within the jurisdiction of the DOJ because QPCF was a privately owned jail and they were unaware that there would be a federal investigation of the Eguridu assault. Thus, they contend, the government did not demonstrate a sufficient nexus between the defendants' conduct and federal jurisdiction for purposes of the obstruction of justice charges.

Where, as here, we are called upon to interpret the meaning of a federal statute, "we look first to the language of the statute itself." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002). "When the language of a statute is unambiguous, 'judicial inquiry is complete.'" *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)). In conducting this inquiry, we "review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme." *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010) (internal quotation marks omitted). We review *de novo* this question of statutory interpretation. *See, e.g.*, *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 607 F.3d 24, 27 (2d Cir. 2010).

We therefore begin with the text of the obstruction of justice statute, 18 U.S.C. § 1519, which provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object *with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States* . . . , or in relation to or contemplation of any such matter . . . , shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519 (emphasis added).

The defendants argue first that the government did not prove a sufficient "nexus" between their conduct and an official proceeding, as required by *United States v. Aguilar*, 515 U.S. 593 (1995), and *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005).

In *Aguilar*, 515 U.S. at 595, a United States district judge who had lied to federal agents during a grand jury investigation was convicted of, *inter alia*, endeavoring to obstruct the due administration of justice under 18 U.S.C. § 1503, which, at the relevant time, provided:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, *influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice*, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1503 (1988) (emphasis added). The Supreme Court affirmed the Ninth Circuit's reversal of the conviction, holding that uttering false statements to an investigating agent who "might or might not testify before a grand jury" is not sufficient to make out a violation of § 1503's prohibition of "endeavor[ing] to influence, obstruct, or impede . . . the due administration of justice." *Aguilar*, 515 U.S. at 599-600. The government must prove instead that the defendant knew of, or at least anticipated, a pending judicial proceeding and intended to obstruct it, *id.* at 601; *United States v. Schwarz*, 283 F.3d 76, 105-06 (2d Cir. 2002), and that the defendant's actions had a "nexus" or "a relationship in time, causation, or logic with the judicial proceedings," *Aguilar*, 515 U.S. at 599-600. The Court reasoned that the government did not show that the "agents acted as an arm of the grand jury, or indeed that the grand jury had even

-8-

summoned the testimony of these particular agents." *Id.* at 600. It concluded that the potential use of Aguilar's testimony was too speculative to have the "natural and probable effect" of interfering with the due administration of justice. *Id.* at 599, 601.

In *Arthur Andersen*, 544 U.S. at 698, an auditor that had instructed its employees to destroy documents pursuant to its document retention policy was convicted of obstruction of justice under 18 U.S.C. § 1512(b)(2), which provided, in pertinent part:

> Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . cause or induce any person to . . . *withhold testimony, or withhold a record, document, or other object, from an official proceeding [or] alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding* . . . shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 1512(b)(2) (2000) (emphasis added). The Supreme Court reversed the conviction. It extended the reasoning of *Aguilar* to § 1512(b)(2), holding that the government was required to prove a "nexus" between the defendant's attempts to persuade another to destroy documents and a pending or foreseeable official proceeding. 544 U.S. at 707-08. It reasoned that a "'knowingly . . . corrup[t] persaude[r]' cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material." *Id.* at 708 (alterations in original); *see also United States v. Reich*, 479 F.3d 179 (2d Cir. 2007) (applying *Aguilar* to hold that § 1512(c)(2), which proscribes corruptly obstructing a judicial proceeding or attempting to do so, requires proof of a nexus between the defendant's conduct and the proceeding).

In reliance upon *Aguilar* and *Arthur Andersen*, the defendants argue the government must "link the[ir] conduct with knowledge of a subsequent official proceeding at the time the

-9-

statement was given and an intention to affect that proceeding." Wells Br. 15. By their terms,

the obstruction statutes at issue in *Aguilar* and *Arthur Andersen*, respectively, addressed conduct

affecting the "due administration of justice" and "official proceeding[s]." *See* 18 U.S.C.

§§ 1503, 1512(b)(2). Section 1519, by contrast, requires proof that the defendant engaged in

obstructive conduct "with the intent to impede, obstruct, or influence the investigation or proper

administration of *any matter within the jurisdiction of any department or agency of the United*

*States*." 18 U.S.C. § 1519 (emphasis added). As Wells concedes, § 1519 "makes no specific

reference to a judicial or official proceeding." Wells Br. 15. The defendants' argument

therefore conflicts with the plain meaning of § 1519. *See Engine Mfrs. Ass'n v. S. Coast Air*

*Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) ("Statutory construction must begin with the

language employed by Congress and the assumption that the ordinary meaning of that language

accurately expresses the legislative purpose." (internal quotation marks omitted)).

The words of the statute are unambiguous, and, thus, "judicial inquiry is complete."

*Conn. Nat'l Bank*, 503 U.S. at 254 (internal quotation marks omitted). In any event, the

defendants' position finds no support in the legislative history of § 1519. The Senate Report

accompanying the bill that became § 1519[4] states:

> Currently, provisions governing the destruction or fabrication of evidence are a
> patchwork that have been interpreted, often very narrowly, by federal courts. For
> instance, certain current provisions make it a crime to persuade another person to
> destroy documents, but not a crime to actually destroy the same documents
> yourself. *Other provisions, such as 18 U.S.C. § 1503, have been narrowly*
> *interpreted by courts, including the Supreme Court in* United States v. Aguillar
> [sic]*, [*515 U.S.*] 593 (1995), to apply only to situations where the obstruction of*
> *justice can be closely tied to a pending judicial proceeding. . . .* In short, the
> current laws regarding destruction of evidence are full of ambiguities and
> technical limitations that should be corrected. This provision is meant to
> accomplish those ends.

---

[4] Congress enacted § 1519 as part of the Sarbanes-Oxley Act of 2002.

Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation. *This statute is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter.* It is also sufficient that the act is done "in contemplation" of or in relation to a matter or investigation. *It is also meant to do away with the distinctions, which some courts have read into obstruction statutes, between court proceedings, investigations, regulatory or administrative proceedings (whether formal or not), and less formal government inquiries, regardless of their title.* Destroying or falsifying documents to obstruct any of these types of matters or investigations, which in fact are proved to be within the jurisdiction of any federal agency are covered by this statute.

S. Rep. No. 107-146, at 14-15 (2002), 2002 WL 863249, at *12-13 (emphases added) (footnotes omitted).

Thus, in enacting § 1519, Congress rejected any requirement that the government prove a link between a defendant's conduct and an imminent or pending official proceeding. The defendants therefore are incorrect in assuming that because the Supreme Court has required a nexus to an official proceeding for purposes of other obstruction statutes, the same nexus requirement must apply to prosecutions under § 1519.[1] As Wells readily concedes, the term "official proceeding" nowhere appears in § 1519. In view of the statute's plain language, which

---

[1] The defendants have identified one case stating that § 1519 requires that the government prove a nexus between a defendant's conduct and an official proceeding. *See United States v. Russell*, 639 F. Supp. 2d 226, 234 (D. Conn. 2007) (observing in *dictum* that "there appears to be little doubt that the nexus requirement applies to prosecutions under [§ 1519]"). By its plain terms, however, § 1519 does not require the existence of an "official proceeding." We therefore reject the defendants' reliance upon *Russell*'s *dictum* as unpersuasive.

-11-

is fully consistent with the legislative history, we decline to read any such nexus requirement into the text of § 1519. *See Conn. Nat'l Bank*, 503 U.S. at 254.

Notwithstanding the asserted nexus requirement, the defendants maintain that they could not have obstructed a matter within the jurisdiction of the DOJ because they were employed by The GEO Group, a private entity that operates QPCF. But they overlook the fact that QPCF contracted with the U.S. Marshals Service, an agency within the DOJ, to house federal prisoners. The warden of QPCF is required by the terms of that contract to report allegations of excessive force to the Marshals Service. Reports of excessive force at QPCF in turn are referred to the DOJ's investigation unit, OIG. As the district court instructed the jury without objection, the DOJ "has jurisdiction and authority to investigate allegations that correctional officers at privately as well as publicly run correctional institutions have violated a person's constitutional rights by using excessive force." App'x 552. Accordingly, we hold that QPCF's internal investigation into whether the defendants' conduct violated QPCF's internal regulations involved a "matter within the jurisdiction" of the DOJ for purposes of 18 U.S.C. § 1519.[2]

The defendants rejoin that their convictions under § 1519 must be reversed because "there is no evidence that [they] knew or contemplated that [their] statements would necessarily be submitted to the DOJ." Wells Br. 15. By the plain terms of § 1519, knowledge of a pending federal investigation or proceeding is not an element of the obstruction crime. *See United States v. Ionia Mgmt. S.A.,* 526 F. Supp. 2d 319, 329 (D. Conn. 2007) ("In comparison to other obstruction statutes, § 1519 by its terms does not require the defendant to be aware of a federal

---

[2] We express no view on whether § 1519 would apply to private investigations outside the unique circumstances of this case, which include that QPCF's operations consist of housing federal prisoners, a function traditionally performed by the federal government, and that QPCF is contractually obligated to report allegations of excessive force to a federal agency.

proceeding, or even that a proceeding be pending."). Insofar as the defendants argue that § 1519 requires proof of knowledge that their false reports would obstruct "the investigation or proper administration of any matter within the jurisdiction" of the DOJ, the defendants did not object to the district court's jury instruction that "[t]he government need not prove that the defendant knew that the [DOJ] had jurisdiction to investigate the allegations of excessive force by correctional officers or that the defendant's falsification of the memorandum actually succeeded in obstructing or influencing a federal investigation." App'x 552. In any event, the government adduced evidence that QPCF had trained the defendants to report any improper use of force, write a truthful report when force is used, and cooperate in any investigation. There was an ample basis to conclude that the defendants, as officers at a facility that housed federal prisoners, were aware of the DOJ's policy of investigating allegations of excessive force at QPCF.

Finally, the defendants contend that the Eguridu assault was "too attenuated" from the subsequent federal investigation to support a conviction under § 1519. We disagree. OIG's investigation commenced within several months of the incident, and, in any case, § 1519 does not require the existence or likelihood of a federal investigation. *See United States v. Kun Yun Jho*, 465 F. Supp. 2d 618, 636 (E.D. Tex. 2006) ("[I]mposing a requirement that the matter develop into a formal investigation ignores the plain meaning of [§ 1519] and the legislative history."), *rev'd on other grounds*, 534 F.3d 398 (5th Cir. 2008). Wells indeed concedes that "there is no requirement that an investigation or proceeding be underway at the time of a defendant's action." Wells Br. 13.

Accordingly, we find no basis to reverse the defendants' convictions for obstruction of justice under 18 U.S.C. § 1519.

-13-

**CONCLUSION**

We have considered the defendants' arguments and find them to be without merit.  We hold that an internal investigation by a privately owned prison that houses federal prisoners of an allegation of excessive force involves a "matter within the jurisdiction" of the Department of Justice for purposes of 18 U.S.C. § 1519.  For the reasons stated herein and in the accompanying summary order, the judgments of the district court are **AFFIRMED**.