18-2836(L)
*United States v. Scott*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

——————————

August Term 2019

(Argued: November 22, 2019    Decided: November 5, 2020)

Docket Nos. 18-2836, 18-2882
——————————

UNITED STATES OF AMERICA,
Appellee,


—v.—


KATHY SCOTT, AKA KATHY TODD,
GEORGE SANTIAGO, JR.,
Defendants-Appellants,

CARSON MORRIS,
Defendant.


——————————

Before:
KEARSE, SULLIVAN, and PARK, Circuit Judges.


Defendants-Appellants Kathy Scott and George Santiago, Jr. – former correction officers with the New York State Department of Correction and Community Supervision – appeal their convictions in the United States District Court for the Southern District of New York (Karas *J.*) for their role in the assault of an inmate at the Downstate Correctional Facility in Fishkill, New York and in its subsequent cover-up.  On appeal, Defendants argue that (1) their convictions

under 18 U.S.C. § 241 for conspiracy to violate civil rights are invalid because there was insufficient time for a conspiracy to form; (2) the district court committed reversible error in instructing the jury that to prove that a defendant falsified records in violation of 18 U.S.C. § 1519, the government was not required to prove the defendant knew his or her conduct would obstruct a federal investigation; and (3) § 1519 is unconstitutionally vague. We reject each of Defendants' arguments. In so doing, we hold that there is no set time for a conspiracy to form under § 241 so long as the surrounding facts and circumstances support the existence of an agreement. We also reaffirm that § 1519 does not require knowledge of an impending federal investigation, and find that the statute is not unconstitutionally vague as applied to this case. For the reasons stated herein and in the summary order issued simultaneously with this opinion, we AFFIRM.

——————————

RICHARD D. WILLSTATTER, Green & Willstatter, White Plains, NY, *for Defendant-Appellant Kathy Scott*.

DANIEL A. HOCHHEISER, Law Offices of Daniel A. Hochheiser, Scarsdale, NY, *for Defendant-Appellant George Santiago, Jr.*

ANDREW DEMBER, Assistant United States Attorney (Anna M. Skotko, Won Shin, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, NY.

——————————

RICHARD J. SULLIVAN, *Circuit Judge*:

Defendants-Appellants Kathy Scott and George Santiago, Jr. appeal their convictions in the United States District Court for the Southern District of New York (Karas, *J.*) for conspiracy to deprive a person of civil rights, in violation of 18

U.S.C. § 241; deprivation of civil rights, in violation of 18 U.S.C. §§ 242 and 2; conspiracy to falsify records, in violation of 18 U.S.C. § 371; and falsification of records, in violation of 18 U.S.C. § 1519. During the two-week jury trial, the government presented evidence that Scott and Santiago, along with other officers of the New York State Department of Correction and Community Supervision ("DOCCS"), assaulted Kevin Moore, an inmate at the Downstate Correctional Facility in Fishkill, New York. The evidence – which included the testimony of fellow DOCCS officers Donald Cosman and Roberto Brown – further revealed that Defendants took numerous steps to cover up the assault, including falsifying the initial use-of-force incident report. Although Defendants challenge their judgments of conviction on several grounds, this opinion is limited to their challenges to the civil rights conspiracy and false records charges under 18 U.S.C. §§ 241 and 1519. The remainder of their arguments on appeal are resolved in a summary order issued simultaneously with this opinion. Finding no error, we AFFIRM the judgments of the district court.

## I. Background

Because Defendants appeal from their judgments of conviction following a jury trial, we summarize the evidence in the light most favorable to the

government. *See United States v. Thompson*, 896 F.3d 155, 159 (2d Cir. 2018). Defendants, along with other correction officers, assaulted Moore, an inmate in the custody of DOCCS, following his arrival at the Downstate facility. At the time, Correction Officers Donald Cosman, Andrew Lowery, Aljamien Gamble, Jonathan Rosario, and Roberto Brown had escorted Moore, Tyron Hollmond, and another inmate to a housing unit complex. After the third inmate was taken to a cell in the general population area, Cosman told Moore and Hollmond that due to a shortage of available cells, they would be housed in the Forensic Diagnostic Unit, an area typically reserved for inmates with mental health issues. Initially, Hollmond refused to go to his cell, and requested that Cosman call his supervisor. Cosman radioed his supervisor, Scott, for assistance, prompting Scott, Santiago, Correction Officer Carson Morris, and a probationary officer to respond to the unit.

Although Hollmond eventually agreed to go to the cell, Moore became agitated and expressed concern that being placed into the Forensic Diagnostic Unit cell would change his health status in the prison records. After Moore began arguing with Morris, Morris punched Moore in the chest, causing him to fall backward. Santiago then grabbed Moore from behind and pulled him to the ground, at which time multiple correction officers held Moore down. Scott then

4

instructed Lowery to remove the probationary officers from the area, which he did.

The remaining officers then beat Moore for approximately two to four minutes. During the assault, as Moore was face down on the ground, Scott grabbed Moore's arm and put a handcuff on his right wrist while Rosario restrained Moore's legs. As the officers continued to assault Moore, Cosman ripped a clump of dreadlocks from Moore's head, and Morris repeatedly kneed the left side of Moore's abdomen. Although Moore did not resist the officers, Scott ordered Lowery to further restrain Moore with a figure-four leg hold that prevented Moore from defending himself. While Lowery applied the leg hold and Scott held Moore's right arm, Santiago kicked Moore's right side and right eye. Cosman also kicked Moore, and, even after both of Moore's hands were handcuffed, Santiago continued to punch Moore.

Although Moore repeatedly pleaded for the officers to stop, the beating continued. Santiago even laughed and asked Moore, "Who's the monster now?" Scott App'x at 87. At no point during the assault did Scott instruct her subordinates to relent.

Moore was left with substantial injuries, which were thoroughly documented during his initial medical treatment. He was eventually taken to the hospital, where doctors determined he had multiple fractures to his cheekbones and eye socket on his right side, five fractured ribs on the left side of his body, and a collapsed lung. He spent a week in two different hospitals and a second week in the hospital at Rikers Island. At trial, a forensic pathologist who examined his medical records and photographs concluded that the injuries could not have been caused by falling or being brought to the ground. Instead, the pathologist testified that the injuries to his face were inconsistent with a punch but were consistent with a being hit by an object like a boot.

The government also presented evidence that Scott and Santiago, along with the other correction officers, sought to cover up the assault. Immediately after the assault, Santiago instructed Cosman to lift up his shirt, and struck him several times with a baton to give the false impression that Moore had attacked Cosman. Morris then rubbed the injury to make it appear more severe, and Scott photographed the injury to memorialize it for the use-of-force documentation. Santiago, Morris, and Cosman filled out the initial use-of-force report; at Scott's direction, they claimed that Moore was the aggressor. They then parroted this

same story in subsequent use-of-force reports. Scott completed additional injury reports stating that she, Santiago, Cosman, and Morris were the only eyewitnesses to the incident, and directed the other officers present not to prepare incident reports, despite the fact that they were required to do so under DOCCS policy. Scott further informed Brown that he "would not be in the paperwork," and instructed him not to speak to anyone about the incident. Scott App'x at 403.

At the conclusion of the two-week trial, the jury convicted Defendants on all four counts alleged in the indictment. The district court sentenced Scott to a term of 100 months' imprisonment to be followed by a one-year term of supervised release, and sentenced Santiago to a term of 87 months' imprisonment to be followed by a one-year term of supervised release.

## II. Discussion

Defendants raise numerous issues on appeal. This opinion addresses three of them: (1) whether there was insufficient evidence to support Defendants' convictions for conspiracy to deprive Moore of his civil rights, in violation of 18 U.S.C. § 241; (2) whether the jury instructions under 18 U.S.C. § 1519 were erroneous; and (3) whether 18 U.S.C. § 1519 is unconstitutionally vague. We address each point in turn.

7

**A. There Was Sufficient Evidence Supporting Defendants' Convictions for Conspiracy to Violate § 241**

We review the sufficiency of the evidence *de novo*. *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019). In challenging the jury's verdict, a "movant bears a heavy burden." *Id.* (internal quotation marks omitted). "A reviewing court must credit every inference that could have been drawn in the government's favor, and affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt." *Id.* (alterations, internal citation, and internal quotation marks omitted).

In arguing that there was insufficient evidence to support their convictions for conspiracy to deprive Moore of his civil rights in violation of 18 U.S.C. § 241, Scott and Santiago principally contend that the assault was spontaneous and that there was insufficient evidence of an agreement among the correction officers. Section 241 makes it unlawful for "two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." 18 U.S.C. § 241.

"The gist of conspiracy is, of course, agreement." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989). Nevertheless, to establish the

existence of a conspiracy, the government "need not present evidence of a formal or express agreement," and may instead rely on proof the parties had a "tacit understanding to engage in the offense." *United States v. Amato*, 15 F.3d 230, 235 (2d Cir. 1994). "[T]he evidence must be sufficient to permit the jury to infer that the defendant and other alleged coconspirators entered into a joint enterprise with consciousness of its general nature and extent." *Beech–Nut Nutrition Corp.*, 871 F.2d at 1191.

Here, Scott and Santiago essentially argue that the frenetic, rapidly developing assault of Moore occurred spontaneously, without an agreement, and that there was therefore no conspiracy. We disagree, and reject Defendants' contention that there must be an extended period of premeditation or a distinct verbal agreement prior to the impetus of the assault. The existence of a conspiracy must necessarily be determined by the facts at issue. While not every group beating is *per se* a conspiracy, the record here demonstrates that Defendants entered into a tacit agreement to violate Moore's civil rights. Although Morris's initial punch may have been spontaneous, the evidence at trial revealed that the other officers acted in concert and purposefully joined the assault. Santiago quickly grabbed Moore from behind to force him to the ground. Scott then

ordered two probationary officers removed from the area, which the jury could reasonably infer reflected an approval of what followed and a conscious intent to reduce the number of witnesses as it continued. Scott and Lowery worked together to restrain Moore, with Scott pulling Moore's arm behind his back and handcuffing his right wrist while Lowery, at Scott's command, applied a figure-four leg hold that restricted Moore's ability to protect himself. Santiago, leveraging the restraint provided by Lowery and Scott, continued to physically beat Moore. Although no one action on its own is necessarily sufficient, the evidence here demonstrates that the group consciously colluded for at least a couple minutes to deprive Moore of his civil rights and that Scott used her supervisory authority to facilitate that assault.

Viewing the evidence in the light most favorable to the government, as we must, we have no hesitation in finding that there was sufficient proof for the jury to conclude that Scott and Santiago entered into a tacit agreement with each other and the other officers to assault Moore, thereby depriving him of rights secured to him by the Constitution, in violation of 18 U.S.C. § 241.

## B.    The District Court Properly Instructed the Jury That § 1519 Does Not Impose a Nexus Requirement

Defendants next argue that the district court incorrectly instructed the jury as to the elements of 18 U.S.C. § 1519.

Where, as here, a defendant fails to object to the jury charge, we review only for plain error.  *United States v. Bahel*, 662 F.3d 610, 634 (2d Cir. 2011).  Under this standard, "an appellate court may, in its discretion" grant relief if the defendant demonstrates (1) error, (2) that is plain, (3) that affected the defendant's substantial rights, which typically means there is a "reasonable probability that the error affected the outcome of the trial," and (4) that "seriously affect[ed] the fairness, integrity[,] or public reputation of judicial proceedings."  *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks omitted).

Section 1519 makes it a crime to:

knowingly . . . falsif[y], or make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case.

18 U.S.C. § 1519.  At trial, the district court instructed the jury that the government was required to prove that the defendant acted "knowingly" and with the "intent to impede, obstruct[,] or influence an investigation or a matter within the

11

jurisdiction of or in relation to or in contemplation of a department or agency of the United States government," while explaining that the prosecution was "not required to prove the defendant . . . knew his or her conduct would obstruct a federal investigation, or that a federal investigation would take place." Santiago App'x at 132.

Defendants argue that the jury instructions were erroneous in light of the Supreme Court's decision in *Marinello v. United States*, 138 S. Ct. 1101 (2018), which they contend required the jury to find a "nexus in time, causation, or logic" between the falsification of records and a "particular federal investigation" that was "reasonably foreseeable" to the defendant, Scott Br. at 39. We disagree.

In *Marinello*, the Supreme Court held that to prove a claim under the "Omnibus Clause" in 26 U.S.C. § 7212(a) – a provision that forbids "corruptly or by force or threats of force . . . obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, the due administration of [the Tax Code]" – the government must establish a nexus between the defendant's acts and a specific, tax-related proceeding that was either pending or reasonably foreseeable at the time of the alleged cover-up. 138 S. Ct. at 1104–05. The Supreme Court highlighted that, in assessing the reach of a federal criminal statute, it "traditionally exercise[s]

restraint . . . , both out of deference to the prerogatives of Congress and out of concern that a fair warning should be given . . . of what the law intends to do if a certain line is passed." *Id.* at 1106 (internal quotation marks omitted). Using these principles as a guide, the Court concluded that the language of the statute counseled a narrow reading. Specifically, it noted that "the verbs 'obstruct' and 'impede' suggest an object," and the broader statutory context suggests that "due administration of the Tax Code" referred to "specific, targeted acts of administration." *Id.*

But we assessed the very arguments raised by Defendants with respect to § 1519 in *United States v. Gray*, 642 F.3d 371 (2d Cir. 2011) and concluded that § 1519 contains no comparable nexus requirement. Specifically, we considered the relevance of the Supreme Court's decisions in *United States v. Aguilar*, 515 U.S. 593 (1995), and *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) – both of which were discussed and relied upon by the Supreme Court in *Marinello* – and found that, unlike the statutes in those cases, § 1519 makes no reference to a concrete proceeding. *See Gray*, 642 F.3d at 376 (noting that "the obstruction statutes at issue in *Aguilar* and *Arthur Andersen*, respectively, addressed conduct affecting the 'due administration of justice' and 'official proceeding[s],'" whereas § 1519 "requires

proof that the defendant engaged in obstructive conduct 'with the intent to impede, obstruct, or influence the investigation or proper administration of *any matter within the jurisdiction of any department or agency of the United States*'"). We found the language of § 1519 to be "unambiguous[ly]" broad, and noted that the legislative history further made clear that the statute was "specifically meant not to include any technical requirement . . . to tie the obstructive conduct to a pending or imminent proceeding or matter." *Id.* at 377 (quoting S. Rep. No. 107-146, at 14–15 (2002), 2002 WL 863249, at *12–13) (emphasis omitted).

In light of the clear differences between the statutory language at issue in *Marinello* and that of § 1519, we are unpersuaded that *Marinello* overrules *Gray*. Accordingly, *Gray* remains good law in this Circuit, and, therefore, the district court did not err – let alone plainly err – in instructing the jury that § 1519 does not have a nexus requirement.[1]

---

[1] In contending that the government failed to prove a nexus, Scott also argues that "there was insufficient proof that the reports here . . . concerned a matter within the jurisdiction of an agency of the United States when made." Scott Br. at 42. To the extent that Scott is making a jurisdictional challenge, we find that there was clearly federal jurisdiction here, since 18 U.S.C. §§ 241 and 242 apply to state officers, and, as even Scott acknowledges, "the FBI and the [U.S. Attorney's Office] have the power to investigate civil rights violations within state prisons." Scott Br. at 42.

14

## C. Section 1519 Is Not Unconstitutionally Vague

Having failed to establish that the district court erroneously instructed the jury, Scott, but not Santiago, contends in the alternative that § 1519 is unconstitutionally vague. A statute raises vagueness concerns if it does not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The "void-for-vagueness doctrine addresses concerns about (1) fair notice and (2) arbitrary and discriminatory prosecutions." *Skilling v. United States*, 561 U.S. 358, 412 (2010). Outside of the First Amendment context, we look to whether the "statute is vague as applied to the particular facts at issue." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010). As a result, one whose conduct is "clearly proscribed" by a statute cannot challenge it as void for vagueness. *United States v. Strauss*, 999 F.2d 692, 698 (2d Cir. 1993).

While Scott acknowledges that § 1519 makes it illegal to knowingly make a false entry in a record "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter," she contends that a literal application of the statute would permit a conviction where a defendant knowingly

15

makes a false entry "in relation to or contemplation of any such matter" even if the defendant did not have the intent to impede a future investigation. *See* 18 U.S.C. § 1519. Accordingly, Scott maintains that the lack of a specific intent requirement for contemplated investigations renders the statute impermissibly vague. But "the Supreme Court has frequently refused to adopt 'the most grammatical reading of the statute' when a lack of intent would risk punishing otherwise innocent conduct." *United States v. Kernell*, 667 F.3d 746, 752 (6th Cir. 2012) (quoting *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 70 (1994)). Instead, when there are two readings of the statute, one constitutional and one not, we presume that Congress intended the former. *See id.* (citing *X–Citement*, 513 U.S. at 74). Thus, as the Sixth Circuit did in *Kernell*, we hold that a defendant must knowingly act with the intent to impede an investigation to be liable under the statute – just as the district court instructed. Such a reading does not raise vagueness concerns.

When read in this manner, § 1519's scienter requirement alleviates any lingering concerns about fair notice. *See Hill v. Colorado*, 530 U.S. 703, 732 (2000) (finding that vagueness concerns are "ameliorated" by the fact that a statute contains a scienter requirement); *see also United States v. Moyer*, 674 F.3d 192, 211 (3d Cir. 2012) ("Section 1519's scienter requirement, moreover, eliminates any

16

concerns regarding statutory vagueness.").  And it is clear that the statute was not vague as applied to Scott's conduct, which involved the filing of a false injury report and the orchestration of false use-of-force reports and photographs designed to mislead prison administrators and others into believing that Moore was the aggressor, as opposed to the victim of a brutal assault.  *See Moyer*, 674 F.3d at 211 ("Any person of ordinary intelligence – let alone a [law enforcement officer] – would comprehend that this statute prohibits . . . officer[s] from knowingly writing a false report with the intent to impede an ongoing, or future, investigation.").  We therefore reject Scott's challenge to the constitutionality of § 1519.

## III.  Conclusion

For the reasons discussed above, we AFFIRM the decision of the district court with respect to Defendants' challenges under §§ 241 and 1519.