RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

DAVID C. KERNELL,
　　　　　　　　*Defendant-Appellant.*

No. 10-6450

_____

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 08-00142-001—Thomas W. Phillips, District Judge.

Argued: October 25, 2011

Decided and Filed: January 30, 2012

Before: MOORE and COLE, Circuit Judges; BECKWITH, Senior District Judge.[*]

_____

## COUNSEL

**ARGUED:** Wade V. Davies, RITCHIE, DILLARD, DAVIES & JOHNSON, P.C., Knoxville, Tennessee, for Appellant. Mark L. Krotoski, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Wade V. Davies, Anne E. Passino, RITCHIE, DILLARD, DAVIES & JOHNSON, P.C., Knoxville, Tennessee, for Appellant. Mark L. Krotoski, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., D. Gregory Weddle, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

_____

[*] The Honorable Sandra Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

COLE, Circuit Judge.  Defendant David Kernell was convicted of obstruction of justice under 18 U.S.C. § 1519 for deleting information from his computer that related to his effort to gain access to the email account of then-Alaska governor and Vice Presidential candidate Sarah Palin.  Section 1519, passed as part of the Sarbanes-Oxley Act of 2002, prohibits the knowing destruction or alteration of any record "with the intent to impede, obstruct, or influence the investigation . . . of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or in contemplation of any such matter or case . . . ."  Kernell argues that § 1519 is unconstitutionally vague, and that there is not sufficient evidence to support his conviction.  We AFFIRM the conviction and sentence.

I.

During the 2008 Presidential election, David Kernell was a student at the University of Tennessee, Knoxville.  In September of 2008, it was reported in the New York Times that Sarah Palin, the then-governor of Alaska and Republican candidate for Vice President, used the email address "gov.palin@yahoo.com" ("the Palin email account") for personal and official business.

In the early morning of September 16, 2008, Kernell attempted to gain access to the Palin email account.  To gain access to a Yahoo! email account without knowing the password, a user could type the user ID[1] into the designated space on the Yahoo! home page and click the "help" link.  From there, the user could access the "forgotten password" feature.  The feature would prompt the user to provide the birthday, country of residence, and zip code of the user of the account.  If this information were correctly provided, the user then answers a "secret question," which had been selected when the

———————————

[1] The user ID is the first portion of the email address listed before the "@yahoo.com" component—in this case "gov.palin."

account was opened.  Upon answering the question correctly, the user would be able to create a new password, and then use that password to access the account.

Kernell used this procedure to gain access to the Palin email account.  Using information publicly available on the internet, Kernell entered Governor Palin's date of birth, country of residence and zip code.  After a couple of unsuccessful attempts, Kernell guessed the correct answer to the secret challenge question: "where did you meet your spouse?"    Kernell then changed the password on the Palin email account to "popcorn," and logged on to the account.

Soon after accessing the Palin email account, Kernell logged on to the internet message board "4chan.org".  4chan is known for its culture of anonymous posting, and often contains content that is offensive or socially unacceptable.  Kernell began a message thread on the /b/, or "random," board claiming to have "hacked," or surreptitiously accessed, the Palin email account.  He supported his claim with screen shots of the Palin email account's Inbox, as well as at least one photograph of members of the Palin family taken from attachments to the emails in the account.  At the end of the thread, he disclosed the new password he created for the Palin email account, allowing any user reading the thread to access the account.  4chan site administrators took down the thread soon after the password was shared.

While this first thread was still active, one anonymous 4chan user claimed to have informed the FBI of Kernell's activities.  Other users encouraged Kernell to distribute the information before government officials discovered the access. Approximately an hour after Kernell initiated the thread, a 4chan user logged into the Palin email account, changed the password to freeze out other users, and informed a Palin aide that the account had been hacked.

The next day, September 17, 2008, Kernell returned to 4chan and began a new thread that began "Hello, /b/" ("the Hello post").  In this thread, Kernell took credit for hacking the Palin email account, and described in detail how he accomplished the task. Kernell claims that he disclosed the password to the 4chan community because he wanted the information "out there," and claimed to have deleted information from his

computer as a result of his fear of being investigated. Kernell also criticized the individual who alerted the Palin staffer to the hack.

Later computer forensic examinations revealed that Kernell had taken numerous actions to remove information from the computer relating to his access to the Palin email account. At some point between the initial post on 4chan and the evening of September 18, Kernell cleared the cache on his Internet Explorer browser, removing the record of websites he had visited during that period. He also uninstalled the Firefox internet browser, which more thoroughly removed the record of his internet access using that browser, and ran the disk defragmentation program on his computer, which reorganizes and cleans up the existing space on a hard drive, and has the effect of removing many of the remnants of information or files that had been deleted. Finally, Kernell deleted a series of images that he had downloaded from the Palin email account.

On the evening of September 18, 2008, the FBI contacted Kernell's father to determine Kernell's whereabouts. The next day, Kernell contacted FBI investigators and attended a brief phone meeting arranged by Kernell's attorney. Kernell called the FBI again on the evening of September 20, but never provided any information to investigators, and later on September 20 the FBI executed a search warrant for Kernell's apartment and seized his computer. The seized computer, despite the deletions, contained numerous items related to accessing the Palin email account, including a draft of the "Hello" post.

A federal grand jury indicted Kernell on four separate offenses. Count One alleged that Kernell committed identity theft in violation of 18 U.S.C. § 1028(a)(7). Count Two alleged that Kernell committed wire fraud in relation to improperly obtaining electronic information belonging to Palin in violation of 18 U.S.C. § 1343. Count Three alleged Kernell improperly obtained information from a protected computer in violation of 18 U.S.C. § 1030(a)(2)(C). Finally, Count Four alleged Kernell obstructed justice stemming from the deletion of information on his computer, in violation of 18 U.S.C. § 1519, a component of the Sarbanes-Oxley Act of 2002.

Before trial, Kernell asserted that Count Four should be dismissed, arguing among other things that the statute was unconstitutional. When this argument was rejected by the district court, Kernell further argued, in a motion for judgment of acquittal at trial, that the government failed produce sufficient evidence to sustain a conviction under § 1519. This too was denied, and the case went to the jury. The jury returned an acquittal on Count Two, deadlocked on Count One, found Kernell guilty on the obstruction of justice charge in Count Four and a lesser-included offense under Count Three. Kernell again moved for acquittal with regard to the obstruction of justice charge, restating the arguments from his previous motions. His motion was denied.

Kernell appeals his conviction, seeking only the dismissal of Count Four.

II.

We review the district court's denial of Kernell's challenge to the constitutionality of 18 U.S.C. § 1519 de novo. *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (quoting *United States v. Hill*, 167 F.3d 1055, 1063 (6th Cir. 1999)). A criminal statute is unconstitutionally vague if it "defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *Krumrei*, 258 F.3d at 537 (quoting *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990) (internal quotation marks omitted)). For challenges to the statute that do not implicate First Amendment concerns, the "defendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation." *Id.* at 537 (citing *Avant*, 907 F.2d at 625).

For appeals from a denial of a judgment of acquittal based on the sufficiency of the evidence, "the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found essential elements of the crime[.]" *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (alteration in original)).

*A. Standing/Actual Knowledge of the FBI Investigation*

The government argues that Kernell does not have standing to challenge the constitutionality of 18 U.S.C. § 1519 as facially void for vagueness because the statute clearly applies to Kernell's conduct. Even if a statute might be vague as it relates to other, hypothetical defendants, courts will not entertain vagueness challenges on behalf of a defendant whose conduct clearly falls within the ambit of the statute. "[T]he dispositive point here is that the statutory terms are clear in their application to the plaintiffs' proposed conduct, which means that plaintiffs' vagueness challenge must fail." *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2720 (2010); *see also Hill*, 167 F.3d at 1064 ("Hill lacks standing to attack Tennessee's gambling statute as it might be applied to others.") To support the idea that § 1519 clearly applies to Kernell's conduct, the government asserts that Kernell had actual knowledge of the FBI investigation, in the form of two postings on the Kernell's 4chan threads in which anonymous commentators state that they have reported Kernell to the FBI. If Kernell has actual knowledge, § 1519 would clearly apply to him, and we would not need to decide whether the "in contemplation" language is impermissibly vague, as Kernell argues.

The government's actual knowledge theory is similar to the theory used in another § 1519 case, *United States v. Fumo*, 628 F. Supp. 2d 573 (E.D. Pa. 2007). *Fumo* involved a Pennsylvania state senator who had been indicted for a host of offenses relating to alleged corrupt conduct stemming from his position, including obstruction of justice under § 1519. Fumo argued, as Kernell does, that the "in contemplation" language was vague as applied to him. *Fumo*, 628 F. Supp. 2d at 598. The court dismissed this argument, holding that Fumo had knowledge of the actual investigation against him. *Id.* The basis for this conclusion was the fact that, prior to the conduct which formed the basis of the indictment against Fumo, the local press extensively reported on the investigation and Fumo and his associates had received grand jury subpoenas in connection with the allegations. *Id.*

Kernell's alleged knowledge of the FBI investigation is not nearly as extensive as the knowledge in *Fumo*. As a preliminary matter, the first 4chan posting could not have provided Kernell actual knowledge of the investigation, because the investigation had likely not begun at that point. The first posting threatening to report Kernell to the FBI came approximately one hour after Kernell first gained access to the Palin email account. There is no evidence that the FBI had begun an investigation of the Palin email account hack at that early point. Kernell could not have had actual knowledge of an investigation that did not yet exist—at most, he had knowledge that some party had provided information that was likely to result in an investigation at some point in the future. As discussed below, this might be sufficient to establish the contemplation of an investigation prong of § 1519, but it does not represent the kind of actual knowledge of an ongoing investigation found in *Fumo*.

Moreover, there is a difference between knowing that conduct has been reported to the authorities and knowing that an investigation is ongoing. In *Fumo*, there was no question that an investigation was ongoing at the time the defendant engaged in the obstructive conduct. Fumo and his associates destroyed documents relating to an investigation that had been in process for over two years, and was widely reported in the media. Here, the posts did not state that the FBI was investigating Kernell's conduct, but only that the FBI might have been alerted to Kernell's conduct. While it would be reasonable to infer that an alert to the FBI would result in an investigation, a reasonable inference of an investigation is again more similar to contemplating an investigation than having actual knowledge of an investigation.

Finally, even if the distinction between knowledge of a tip to authorities and knowledge of an investigation is merged, the government presumes that Kernell (or a reasonable person in Kernell's position) would have believed the anonymous posters had actually reported him to the FBI. This is far from clear. Even more so than most anonymous tips, statements made on 4chan have no indicia of reliability. *Cf. Florida v. J.L.*, 529 U.S. 266, 270 (2000) (holding that anonymous tips require some indicia of reliability in order to form the basis for probable cause or reasonable suspicion). None

of the posts to which the government points are unambiguous claims that Kernell had been reported. But even if the posts were unambiguous claims that Kernell had been reported, a key component of the culture of 4chan consists of anonymous posters making claims that are not in fact true. Much of the conversation on the threads started by Kernell revolved around whether Kernell actually hacked the Palin email account, or whether he was "trolling"[2] the 4chan community. Similarly, Kernell could have interpreted the references to contacting the FBI as trolling posts. At best, the posts increased the chance that the FBI would investigate Kernell. Once again, this speaks more to the contemplation of an investigation than to actual knowledge.

Absent the claim that Kernell had actual knowledge of the investigation, the government offers no reason why Kernell does not have standing to challenge the constitutionality of the "in contemplation" language of § 1519 that was applied to him. Thus, Kernell has standing to challenge the constitutionality of § 1519 as it was applied to him.

## B. *Kernell's Constitutional Challenge to § 1519*

Kernell raises two related challenges to the constitutionality of 18 U.S.C. § 1519. First, Kernell argues that the structure of the statute creates an ambiguity as to the application of *mens rea* to the various elements of the statute. Second, Kernell argues that the statute's requirement that the defendant act "in contemplation of an investigation" is vague as to the required state of mind.

Section 1519 states:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

---

[2] "Trolling" refers to the practice, common on 4chan and other internet sites, of deliberately posting incorrect or inflammatory content for the purpose of elicting a reaction from other users.

Kernell argues that the statute prohibits two types of conduct: (1) knowingly destroying documents with the intent to impede an investigation, and (2) knowingly destroying documents in relation to or in contemplation of an investigation. For this reason, Kernell argues that § 1519 is a general intent statute as it was applied to him, and the lack of specific intent to obstruct for those convicted of destroying documents in contemplation of an investigation renders the statute vague.

Grammatically, Kernell has an argument. The phrase starting "with the intent to impede" requires a direct object, and there is no natural reading of the statute that makes a contemplated investigation that object, particularly given the presence of the word "or" rather than "either" before the phrase "in relation to or in contemplation of." However, the Supreme Court has frequently refused to adopt "the most grammatical reading of the statute" when a lack of intent would risk punishing otherwise innocent conduct. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994). When faced with two readings of the statute, one of which is constitutional and the other which is not, Congress is presumed to have enacted a constitutional statute. *See X-Citement*, 513 U.S. at 74. Additionally, Congressional statements about § 1519 strongly support the argument that Congress intended a specific intent to apply throughout § 1519. "[T]he intent required is the intent to obstruct, not some level of knowledge." 148 CONG. REC. S7418, S7419 (daily ed. July 26, 2002) (statement of Senator Leahy).

The Eighth Circuit, in *United States v. Yielding*, 657 F.3d 688 (8th Cir. 2011), recently parsed the language § 1519 in a manner we find instructive. *Yielding* identifies three scenarios under which § 1519 would apply: "(1) when a defendant acts directly with respect to "the investigation or proper administration of any matter," that is, a pending matter, (2) when a defendant acts "in . . . contemplation of any such matter," and (3) when a defendant acts "in relation to . . . any such matter." *Yielding*, 657 F.3d at 711. Under this reading, "[t]he statute . . . does not allow a defendant to escape liability for shredding documents with intent to obstruct a foreseeable investigation of a matter within the jurisdiction of a federal agency just because the investigation has not yet commenced." *Id.* However, "the statute does not impose liability for 'knowingly . . .

destroy[ing] . . . any . . . document . . . in . . . contemplation of any [federal] matter,' *without* an intent to impede, obstruct, or influence a matter." *Id.* (quoting the statute) (alterations and emphasis in the original). By applying this requirement to each of the three scenarios, the construction creates the needed specific intent and avoids Kernell's concern that "the statute would forbid innocent conduct such as routine destruction of documents that a person consciously and in good faith determines are irrelevant to a foreseeable federal matter." *Id.* The district court used *Yielding*'s interpretation of the statute when it instructed the jury.**3** We agree with the district court and *Yielding* in their interpretation of § 1519.

Contrary to Kernell's assertions, other case law interpreting § 1519 is in harmony with the government's construction. Kernell cites to *United States v. Russell* as support for his "knowingly-only" interpretation. 639 F. Supp. 2d 226, 239-40 (D. Conn. 2007), *rejected on other grounds by United States v. Gray*, 642 F.3d 371, 378 n.5 (2d Cir. 2011). The portion of *Russell* cited by Kernell does state that "[t]he scienter requirement for § 1519 is that a defendant act knowingly," *id.* at 240, but a prior portion of the opinion makes clear that the government is required to prove that the defendant intended to interfere with a government investigation. *See Id.* at 237 ("[W]hether Russell had the intent to obstruct justice is another factual question whose resolution must await trial, at which time the government will have to produce evidence of conduct that, in [the defendant's] mind, had the natural and probable effect of obstructing or interfering with [an official proceeding or a FBI investigation]." (internal quotations and citations omitted) (alteration in original)). Other courts to have considered the question have applied a similar framework and required an intent to obstruct, even when the false statement was made before the federal investigation commenced. *See United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008) ("This statute rather plainly criminalizes the conduct of an individual who (1) knowingly (2) makes a false entry in a record or

---

**3**"For you to find the defendant guilty of Count 4, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:
First, the defendant knowingly altered, destroyed or concealed a record or document; and. [sic]
Second, the defendant acted with the intent to impede, obstruct or influence the investigation of a matter by or within the jurisdiction of the Federal Bureau of Investigation which he either knew of or contemplated."

document (3) with intent to impede or influence a federal investigation."); *United States v. Jho*, 465 F. Supp. 2d 618, 637 n.9 (E.D. Tex. 2006), *rev'd on other grounds*, 534 F.3d 398 (5th Cir. 2008) ("Section 1519 contains a *mens rea* requirement in that it requires that the defendant act *knowingly* with the *intent* to obstruct justice.") (emphasis in original)).

Kernell argues that even under the government's construction, the statute is unconstitutional because of ambiguities regarding whether it contains requirements found in other obstruction-of-justice provisions, such as a nexus between the investigation and the alleged conduct or the requirement for the alleged conduct to be done with "corrupt intentions" or be "inherently malign." *See generally United States v. Aguilar*, 515 U.S. 593 (1995) (nexus requirement); *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) ("inherently malign" requirement). Kernell asserts that the fact that some courts have applied requirements from other obstruction of justice statutes to § 1519 while others do not proves that the statute is vague. Even if true, the fact that different courts have interpreted a statute differently does not make the statute vague—if that were true, a circuit split over the interpretation of a criminal statute would by definition render the statute unconstitutional.

It should also be noted that the differences between the courts' approaches to § 1519 are not as great as Kernell implies. To the extent that cases interpreting § 1519 have discussed *Arthur Andersen* and corrupt intent, they have found that § 1519 meets that requirement, or the "intent to obstruct" language subsumes the requirement. *See United States v. Moyer*, 726 F. Supp. 2d 498, 506 (M.D. Pa. 2010) ("[The language of the statute] imposes upon the § 1519 defendant the same sinister mentality which 'corruptly' requires of a § 1512(b)(2) defendant."); *see also United States v. Stevens*, 771 F. Supp. 2d 556, 561 (D. Md. 2011) (quoting *Moyer*). Whether or not courts have explicitly discussed *Arthur Andersen*, no decision interpreting § 1519 implies that *Arthur Andersen* imposes an additional requirement beyond that found in the text of § 1519. Moreover, circuit courts interpreting § 1519 have not applied *Arthur Andersen.* Thus, there is no real ambiguity or dispute over whether *Arthur Andersen* applies to § 1519.

Two district courts have applied the nexus requirement to § 1519. *See Moyer*, 726 F. Supp. 2d at 505-06; *Russell*, 639 F. Supp. 2d at 234. We are neither bound by their interpretation, nor do we agree with it. As the government points out, the nexus requirement is derived from the langauge of other obstruction-of-justice statutes, wording that is not found in § 1519. Congress is not required to use the same structure for all obstruction-of-justice statutes. In addition, the legislative history of § 1519 shows that Congress designed the provision to be more expansive than earlier obstruction of justice statutes by dispensing with some of these collateral requirements. The Senate report that accompanied the Sarbanes-Oxley Act specifically disclaimed a nexus requirement for § 1519. *See Gray*, 642 F.3d at 377 (quoting S.Rep. No. 107-146 at 14-15 (2002), 2002 WL 863249, at *12-13) ("Other provisions, such as 18 U.S.C. § 1503, have been narrowly interpreted by courts, including the Supreme Court in *United States v. Aguilar*. . . to apply only to situations where the obstruction of justice can be closely tied to a pending judicial proceeding. . . . [Section 1519] is specifically meant not to include any technical [nexus] requirement . . . .") As the Eighth Circuit discussed in *Yielding*, importing requirements from other obstruction of justice cases over to § 1519 is directly contrary to the legislative intent, as well as having no support in the text itself. *Yielding*, 657 F.3d at 712-13; *see also Gray*, 642 F.3d at 378 ("In view of the statute's plain language, which is fully consistent with the legislative history, we decline to read any such nexus requirement into the text of § 1519.")

Kernell also argues that the "in contemplation of an investigation" element is vague, because it does not specify what a defendant must know or believe about an investigation in order to trigger potential liability under § 1519. Courts considering the question have consistently held that the belief that a federal investigation directed at the defendant's conduct might begin at some point in the future satisfies the "in contemplation" prong. We articulated this principle clearly in *United States v. Lanham*, 617 F.3d 873 (6th Cir. 2010). In *Lanham*, corrections officers intentionally placed an 18-year-old who had been arrested for speeding and eluding police in the general population cell as a punishment for attempting to assault a friend of the officers. *Lanham*, 617 F.3d at 879-80. When the young man was later sexually assaulted by

inmates, the officers signed a statement that he was placed in general population because of the need to decontaminate available "detox" cells. *Id.* at 881. After being convicted under § 1519, the officers argued on appeal that they did not make their false statement "in contemplation" of an investigation because no investigation had begun at the time. *Id.* at 887. The Court affirmed the conviction, stating that "the falsification was presumably done in contemplation of an investigation that might occur." *Id.*

While this interpretation makes "in contemplation" under § 1519 very broad, it is consistent with the legislative history and other cases to consider the question. *See Jho*, 465 F. Supp. 2d at 636 ("[I]mposing a requirement that the matter develop into a formal investigation ignores the plain meaning of the statute and the legislative history."); *see also United States v. Ionia Mgmt.*, *S.A.*, 526 F. Supp. 2d 319, 329 (D. Conn. 2007) ("In comparison to other obstruction statutes, § 1519 by its terms does not require the defendant to be aware of a federal proceeding, or even that a proceeding be pending.").

Moreover, even if this element is potentially vague as it relates to hypothetical defendants, it is not vague as it relates to Kernell. As with the officers in *Lanham*, Kernell had a recognition (memorialized in his "Hello" post) that his conduct might result in a Federal investigation:

> "THIS internet was serious business, yes I was behind a proxy, only one, if this sh** ever got to the FBI I was f*****, I panicked, i still wanted the stuff out there but I didn t know how to rapidsh** all that stuff, so I posted that pass on /b/, and then promptly deleted everything, and unplugged my internet and just sat there in a comatose state."

(edited from the original). Thus there is no doubt from this post that Kernell "contemplat[ed]" that an investigation would occur when he took his action, since he specifically referenced the possibility of an FBI investigation in his post. As such, to the extent there are any ambiguities in the "contemplation" prong, Kernell may not raise or rely on them. *See Humanitarian Law Project*, 130 S.Ct. at 2720.

Finally, Kernell argues that § 1519 should be limited only to those entities that have an pre-existing duty under the law to retain records or documents. There is nothing in the text of the statute that would suggest such a requirement, and we decline to impose such a limitation without direction from Congress. In addition, courts have imposed liability under § 1519 on defendants who clearly had no legal obligation to create or maintain the records at issue. *See United States v. Wortman*, 488 F.3d 752, 753 (7th Cir. 2007) (holding that a woman who destroyed a CD containing child pornography belonging to her boyfriend was subject to § 1519); *Russell*, 639 F. Supp. 2d at 238-39 (holding that an attorney who deleted child pornography he found on a church computer is subject to § 1519).

Section 1519 clearly sets out the elements that the government must prove for a conviction under the statute. All courts looking at the question have rejected the constitutional challenge, and any ambiguities that might exist apply to a hypothetical defendant, not to Kernell and his specific conduct. For this reason, we reject Kernell's challenge to the constitutionality of 18 U.S.C. § 1519.

*C. Kernell's Sufficiency of the Evidence Challenge*

Kernell also contests the sufficiency of the evidence supporting his conviction. For sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "This is a very heavy burden" for the convicted defendant to meet. *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011) (internal quotation marks and citation omitted).

As discussed above, for the government to support a conviction under § 1519, as it relates to Kernell, it must show (1) that he knowingly deleted or altered the information on his computer (2) with the intent to impede, obstruct or influence an investigation that (3) he contemplated at the time of the deletion or alteration. The government has put forward sufficient evidence on each of these points.

Kernell does not dispute the first element.  He does not contend that deletion of files or the running of the hard drive defragmenter was done accidentally, instead conceding that he initiated the actions on his computer which removed the information. Kernell does dispute the second element, and contends that there is insufficient evidence to support the conclusion that he deleted the information with obstructive intent.  In support of this claim, Kernell essentially argues that nothing that is written on the internet can be taken seriously, so the entire content of the postings Kernell made should be discounted.  Kernell is correct that we should exercise caution when interpreting internet postings literally, given that they are often "jargon-heavy," containing obscure references and inside jokes.  However, in this case, Kernell's "Hello" posting on 4chan does not require in-depth knowledge of internet culture to interpret.  Kernell expressly states that he deleted the information on his computer out of a fear that the FBI would find it, plainly showing that he took his actions with the intent to hinder an investigation. Even with proper skepticism directed toward claims made on the internet, a self-incriminating statement such as Kernell's provides sufficient evidence for a reasonable jury to conclude that he acted with obstructive intent.

Finally, Kernell challenges the sufficiency of the evidence establishing that he contemplated a government investigation when he removed the evidence from his computer.  Again, the "Hello" post makes clear that he believed a federal investigation was at least the possible outcome of his actions.  That is sufficient to sustain the government's burden under § 1519.  *Lanham*, 617 F.3d at 887.  Therefore, the government put forward sufficient evidence to support a conviction under § 1519, and Kernell's conviction is upheld.

III.

For the foregoing reasons, we AFFIRM the conviction and sentence.