### UNITED STATES of America
### v.
### YIHAO PU, and Sahil Uppal.
### Criminal Action No. 11 CR 699.

United States District Court,
N.D. Illinois,
Eastern Division.

Signed April 17, 2014.

---

Benjamin F. Langner, Felicia Manno Alesia, AUSA, United States Attorney's Office, Chicago, IL, for United States of America.

Carolyn Pelling Gurland, Carolyn & Gurland Attorney at Law, Robert P. Greenspoon, William W. Flachsbart, Flachsbart & Greenspoon, LLC, Chicago, IL, for Yihao Pu, and Sahil Uppal.

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge.

Before the Court is Defendant Yihao Ben Pu's ("Pu") motion to dismiss the

Superseding Indictment. Also before the Court are Sahil Uppal's ("Uppal") motions to dismiss Counts Four through Nine and Count Twenty–Three of the Superseding Indictment, or alternatively for a bill of particulars. For the following reasons, the motions are denied.

## I. BACKGROUND

On April 11, 2013, Pu was charged by Superseding Indictment of nine counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts One through Nine), ten counts of theft of trade secrets from Company A and Citadel, in violation of the Economic Espionage Act of 1996 ("EEA"), 18 U.S.C. § 1832(a)(2)-(3) (Counts Ten through Nineteen), three counts of accessing Citadel's computer system without authorization and exceeding authorized access, in violation of the Computer Fraud and Abuse Act of 1986 ("CFAA") (Counts Twenty through Twenty–Two, 18 U.S.C. § 1030(a)(2)(C), and obstruction of justice, in violation of 18 U.S.C. § 1519 (Count Twenty–Three)). Co-defendant Uppal was also charged by Superseding Indictment of six counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Four through Nine), and one count of obstruction of justice, in violation of 18 U.S.C. § 1519 (Count Twenty–Three). Pu and Uppal's motions to dismiss the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) are fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

■ "Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Moore,* 563 F.3d 583, 586 (7th Cir.2009) (internal quotation marks and citation omitted). Rather, it is a means to allege a defect in the indictment. Fed.R.Crim.P. 12(b)(3)(B). An indictment is legally sufficient if it: (1) states the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges; and (3) allows the defendant to plead the judgment as a bar to future prosecutions of the same offense. *United States v. Vaughn,* 722 F.3d 918, 925 (7th Cir.2013) (citing *United States v. Smith,* 230 F.3d 300, 305 (7th Cir.2000)); *see also* Fed.R.Crim.P. 7(c)(1). "[A]n indictment that 'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive." *Vaughn,* 722 F.3d at 925 (internal quotation marks and citations omitted). Thus, "[t]o successfully challenge the sufficiency of an indictment, a defendant must demonstrate that the indictment did not satisfy one or more of the required elements and that he suffered prejudice from the alleged deficiency." *Id.* (citing *United States v. Dooley,* 578 F.3d 582, 589–90 (7th Cir.2009)). Indeed, "[t]he test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id.* (internal quotation marks and citation omitted). In deciding a motion to dismiss, the Court accepts all allegations in the Superseding Indictment as true. *Moore,* 563 F.3d at 586 (citations omitted).

### B. Motions to Dismiss the Superseding Indictment

Upon review of the Superseding Indictment "practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner,'" *United States v. Fassnacht,* 332 F.3d 440, 446 (7th Cir.

2003) (citing *Smith*, 230 F.3d at 305), the Court concludes that the Superseding Indictment contains each required element and provides sufficient notice to Pu and Uppal of what the government intends to prove. Nevertheless, the Court addresses Pu and Uppal's arguments that the Superseding Indictment should be dismissed for failure to state a claim under the governing statutes.

### 1. Counts One through Nine

■ Pu argues that the wire fraud counts, Counts One through Nine, should be dismissed because criminal intellectual property theft does not constitute wire fraud. Not so. Section 1343 reaches "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *Carpenter v. United States*, 484 U.S. 19, 27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). And intangible property, such as "[c]onfidential business information has long been recognized as property." *Id.* at 26, 108 S.Ct. 316 (citations omitted). Nonetheless, Pu argues that *Carpenter* sets a high bar for the government to show a scheme to obtain confidential business information by requiring disclosure of such information to a third party. On this basis, Pu asserts the Superseding Indictment is insufficient because it fails to allege that he or Uppal shared the content of the confidential business information with any non-employee of Company A or Citadel, or that any non-employee learned the content of the information. The Court cannot accept this argument. That the defendants in *Carpenter* disclosed confidential business information to a third party does not proscribe an additional element of the offense; rather, this fact merely provided evidence of the required specific intent to defraud. *See Carpenter*, 484 U.S. at 27–28, 108 S.Ct. 316. Indeed, the Supreme Court explicitly rejected any argument that a scheme to defraud requires "monetary loss, such as giving the information to a competitor," finding the deprivation of the right to exclusive use was sufficient. *Id.* at 26, 108 S.Ct. 316. To the extent Pu argues that his use of the confidential business information was for "legitimate work purposes," Yihao Ben Pu's Mot. to Dismiss the Superseding Indictment & Br. in Supp. 5, the dispute presents a factual issue that is premature at this stage in the proceedings, and should not be considered by the Court on the instant motion.

Next, Pu argues that Counts One through Nine should be dismissed because the government cannot show that each of the nine discrete wire transmissions was made for the purpose of executing the alleged scheme. Pu first argues that the wire communications that occurred while he was employed by Citadel could not be a part of the scheme to defraud Company A because he and Uppal were no longer employed there. This argument is patently without merit. The Superseding Indictment alleges that the scheme was in effect from August 2009 to August 30, 2011, and involved both Company A and Citadel. "The fortuity of the timing of the [wire communication]—whether it occurred at the start or the conclusion of a fraudulent scheme—cannot be the determining factor as to whether the government can produce evidence of the scheme." *United States v. Boone*, 628 F.3d 927, 935 (7th Cir.2010) (affirming mail fraud conviction); *see also Carpenter*, 484 U.S. at 25 n. 6, 108 S.Ct. 316 (applying the same analysis to both the mail fraud and wire fraud statutes). Pu's second argument—that the wire transmissions were merely "incidental to, and not intertwined with, the obtaining of" Citadel files, Yihao Ben Pu's Mot. to Dismiss the Superseding Indictment & Br. in Supp. 6—is likewise without merit. *See United States v. Sheneman*, 682 F.3d 623,

629–30 (7th Cir.2012) ("[I]t is not necessary for the use of the wires to contain any false or fraudulent material, and even a routine or innocent use of the wires may satisfy this element so long as that use is part of the execution of the scheme." (citing *United States v. Turner*, 551 F.3d 657, 666 (7th Cir.2008))). Thus, Pu's motion to dismiss Counts One through Nine is denied.

■ By contrast, Uppal argues that Counts Four through Seven fail to demonstrate criminal conduct. Specifically, these counts allege that Pu and Uppal schemed to defraud Company A and Citadel of their confidential business information, and that on July 22, 2011, July 25, 2011, July 26, 2011, and July 29, 2011, Pu and Uppal accessed their personal email accounts using Citadel's computer system and engaged in interstate Google instant messaging chats ("gchats") which constitute "step[s] in the plot." *Sheneman*, 682 F.3d at 629 (internal quotation marks and citation omitted). The Superseding Indictment alleges that during these gchats, Pu and Uppal discussed the following: (1) "their need for a larger amount of market data to test [computer] code for their use in trading strategies that were not authorized by Citadel," Superseding Indictment 15, ¶ 2; (2) "their need for a system to profitably trade the market," *id.* at 16, ¶ 2; (3) "their joint R session,"[1] *id.* at 17, ¶ 2; and (4) their need for "obtaining years' worth of market or 'tick' data," *id.* at 18, ¶ 2. The Superseding Indictment further alleges that on July 26, 2011, Uppal transferred three of Citadel's confidential files to an "R session," which was being conducted jointly by Pu and Uppal.

According to Uppal, these gchats are innocent in nature and do not pertain to the transfer of trade secrets from Citadel.

Uppal also complains that the government failed to attach the gchats to the Superseding Indictment and asserts that he cannot defend against the charges. Uppal, however, "ask[s] too much from the indictment. After all, the defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *Fassnacht*, 332 F.3d at 446 (internal quotation marks and citation omitted). Because the elements of the crime have been specified, including the date and place of the alleged criminal conduct, the Superseding Indictment is sufficient. Moreover, the Court declines Uppal's invitation to entertain factual issues at this stage in the proceedings.

■ Second, Uppal argues that Counts Eight and Nine, alleging wire fraud, do not allege acts by him; rather, he claims that the Superseding Indictment "lumps" Uppal and Pu together for purposes of charging Uppal with a crime. Counts Eight and Nine allege that on August 7, 2011 and August 10, 2011, in furtherance of their scheme to defraud, Pu and Uppal knowingly caused to be transmitted "an electronic trading order for E–Mini S & P 500 futures contract, sent from Chicago, Illinois, through Pu's Interactive Brokers account, whose computer servers were located in Greenwich, Connecticut." Superseding Indictment 19–20. Uppal argues, *inter alia*, that the indictment is insufficient because the government does not and cannot allege that he had any ownership, control or other interest in Pu's brokerage account, that he knew that the account existed, that he was present at the time the orders were transmitted or even knew that the orders were entered by Pu, or that he participated in the creation or management of Pu's brokerage account. The absence of these

---

[1]. An "R session" is a "method by which multiple people can simultaneously use a comput-er program written in the R language." Superseding Indictment 10, ¶ 15.

specific factual allegations, however, is not dispositive. *Vaughn,* 722 F.3d at 925. The Court finds that the factual particulars here are sufficient, such that Uppal is aware of the specific conduct at issue. To the extent Pu's argument relates to the sufficiency of the government's evidence, it is premature at this stage in the proceedings. Uppal's motion to dismiss Counts Four through Nine is therefore denied.

### 2. Counts Ten through Twenty–Two

Pu seeks dismissal of Counts Ten through Twenty–Two on the same basis as those contained within his original motion to dismiss the indictment, which was denied on February 7, 2013. With respect to Counts Ten through Nineteen, Pu argues that his alleged conduct simply does not violate the EEA. In support of this argument, Pu cites non-binding authority, *United States v. Aleynikov,* 676 F.3d 71 (2d Cir.2012), and *United States v. Agrawal,* 726 F.3d 235 (2d Cir.2013). In *Aleynikov,* the court considered the sufficiency of an indictment where the defendant had been convicted under the EEA, following a jury trial. *Aleynikov,* 676 F.3d at 73. The court determined that the defendant's theft of source code relating to Goldman Sachs & Co.'s high frequency trading ("HFT") system was not an offense under the EEA because the system was not "designed to enter or pass in commerce, or to make something that does."[2] *Id.* at 82. Pu argues that "Company A's and Citadel's relevant products are HFT systems, just like Goldman's" and that the "software and software outputs mentioned in the Indictment never get sold or delivered to anyone." Mot. to Dismiss 13. According to Pu, *Aleynikov* therefore precludes the present EEA prosecution. As clarified in *Agrawal,* however, the holding in *Aleynikov* is of no persuasive value here as "[i]t does not, and cannot, establish that the kind of conduct in which Aleynikov and Agrawal engaged is intrinsically legal." *Agrawal,* 726 F.3d at 243 n. 6. Pu's argument to the contrary is without merit. Pu also claims that HFT systems are not "products," which could be "produced for" or "placed in" commerce. The Court rejects this argument. In any event, the Court notes that the Superseding Indictment does not specify that only HFT systems (which are comprised of computer programs), and not the securities traded on international financial markets could satisfy the EEA's product requirement.

Pu also argues that the CFAA counts, Counts Twenty through Twenty–Two, should be dismissed for failure to state a claim. Under the CFAA, it is a crime to "intentionally access[ ] a computer without authorization or exceed[ ] authorized access, and thereby obtain[ ] ... information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). Although the CFAA does not define the phrase "without authorization," it defines the phrase "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." Id § 1030(e)(6). According to Pu, the facts alleged in the Superseding Indictment— namely, that he used his work computer to download and transfer files which contained Citadel's propriety source code for computer programs related to HFT strategy and infrastructure software—do not

---

2. The Theft of Trade Secrets Clarification Act of 2012, Pub.L. 112–236, 126 Stat. 1627 (2012) (codified as amended at 18 U.S.C. § 1832), was passed to correct *Aleynikov's* "narrow reading to ensure that our federal criminal laws adequately address the theft of trade secrets related to a product or service used in interstate commerce." 158 Cong. Rec. S6978–03 (daily ed. Nov. 27, 2012) (statement of Rep. Leahy).

constitute a crime because Citadel granted him access to those files. This argument, however, amounts to a premature challenge to the sufficiency of the government's evidence tending to prove a material element of the offense and is therefore rejected. Pu's motion to dismiss Counts Ten through Twenty–Two is therefore denied.

### 3. Count Twenty–Three

**■** Finally, both Pu and Uppal argue that Count Twenty–Three, alleging anticipatory obstruction of justice, should be dismissed. The Superseding Indictment alleges, among other things, that on or about August 26, 2011, Pu and Uppal,

> acting with the belief that a federal investigation into PU's and UPPAL's conduct might begin at some point in the future, with the assistance of Individual A, concealed and transferred from PU's apartment to Individual A's apartment computer equipment, including PU's personal Seagate computer hard drive, which contained File 1 and File 2, and PU's personal Hitachi hard drive, which contained File 5 and File 6.

Superseding Indictment 40–41, ¶ 4. Further, the Superseding Indictment alleges that "[o]n or about August 28, 2011, at or near a sanitary canal near Wilmette Harbor, Illinois, PU caused Individual A to dispose of certain computer equipment, including the Hitachi hard drive." *Id.* at 41, ¶ 5. Pu argues that these acts do not constitute a crime. Specifically, Pu claims that the act of transferring two hard drives to Individual A does not constitute a statutory act of altering, destroying, concealing, or covering up a record, document or object, and the act of causing Individual A to dispose of equipment as alleged does not include a *mens rea* component. Uppal, like Pu, argues that his conduct in transferring computer equipment from one

apartment to another does not constitute obstruction of justice. The Court, however, rejects Pu and Uppal's attempts to isolate the government's allegations in a hypertechnical manner. Viewed in its entirety, the Superseding Indictment provides sufficient facts constituting the offense charged.

**■** Pu also argues that Count 23 is defective insofar as it does not plead the existence of an ongoing, pending federal investigation. Similarly, Uppal argues that the Superseding Indictment fails to provide a nexus between Uppal's conduct and the pending investigation or proceeding that he intended to obstruct. *See United States v. Russell* 639 F.Supp.2d 226, 233–234 (D.Conn.2007). Section 1519, however, "does not require the existence of or likelihood of a federal investigation." *United States v. Gray,* 642 F.3d 371, 379 (2d Cir.2011) (citation omitted). Section 1519 provides, in its entirety:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or *in relation to or contemplation of any such matter or case,* shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519 (emphasis added). Based on the plain language of § 1519, an ongoing federal investigation is not a jurisdictional prerequisite which must be satisfied to invoke federal criminal prosecution. Likewise, the plain meaning of § 1519 does not require the government to prove a nexus between a defendant's conduct and an official proceeding. "[T]he belief that a federal investigation directed at the defen-

dant's conduct might begin at some point in the future satisfies the 'in contemplation' prong [of § 1519]." *United States v. Kernell,* 667 F.3d 746, 755 (6th Cir.2012). The Court declines to read in a limitation that conflicts with the plain meaning of § 1519. While the scope of § 1519 is broad, it is by design. S. REP. No. 107–146, at 14–15 (2002) ("Section 1519 is meant to apply broadly.... This statute is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter.").

■ Pu and Uppal's alternative argument that this interpretation renders the statute unconstitutionally vague is without merit. The specific intent element of the offense extends to prosecutions based on contemplated investigations or matters and therefore avoids the vagueness concerns that § 1519 overreaches in criminalizing innocent conduct. *See, e.g., Kernell,* 667 F.3d at 752–53; *United States v. Moyer,* 674 F.3d 192, 211–12 (3rd Cir.2012); *United States v. Yielding,* 657 F.3d 688, 715 (8th Cir.2011).

■ Lastly, Pu argues that Count Twenty Three should be dismissed because his alleged obstruction relates to a grand jury investigation, not to a matter within the administrative jurisdiction of any executive branch agency or department. This argument, however, improperly tests the sufficiency of the government's evidence. Whether the alleged obstruction relates to a grand jury investigation as opposed to an investigation conducted by the Federal Bureau of Investigation—a department of the United States government—after being contacted by Citadel, as the government contends, is a matter that must be resolved at trial. Accordingly, Pu and Up-pal's motions to dismiss Count Twenty–Three are denied.

## III. CONCLUSION

For the foregoing reasons, Pu and Uppal's motions to dismiss the Superseding Indictment are denied. Uppal's motion for a bill of particulars is also denied. *Vaughn,* 722 F.3d at 927 ("[A] bill of particulars is unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense." (internal quotation marks and citations omitted)).

IT IS SO ORDERED.