NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0457n.06

No. 19-6276

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 04, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BRAYLON BUTLER, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, GIBBONS, and BUSH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. A jury convicted Braylon Butler of obstructing correspondence in violation of 18 U.S.C. § 1702. On appeal, Butler argues that the trial evidence was insufficient to support his conviction. He also argues that, as used in § 1702, the term "opens" is unconstitutionally vague and that the district court abused its discretion by denying his request to instruct the jury on a lesser-included offense. We find no error and affirm.

I.

A federal grand jury indicted Butler on two counts of obstructing correspondence in violation of 18 U.S.C. § 1702.[1] The first count of the indictment alleged that Butler, while a FedEx

---

[1] Section 1702 reads as follows:

> Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or

employee, "knowingly open[ed] a letter, postal card, or package which had been in a post office or other authorized depository for mail matter or in the custody of any letter or mail carrier before it had been delivered to the person to whom it was directed." DE 45, Superseding Indictment, PageID 122. The second count was dismissed on the government's motion prior to trial.

At trial, the government's first witness, Richard Epperson, testified about the relationship between FedEx and the United States Postal Service ("USPS"). Epperson, then a USPS employee overseeing the agency's contract with FedEx, described why U.S. mail traveled through the FedEx hub where Butler was employed. He explained that, because USPS owns no aircraft, it must contract with companies like FedEx to transport U.S. mail by air. Under one such contract, FedEx handles seventy percent of U.S. mail requiring air transport. Approximately seventy-five percent of that mail passes through the FedEx hub where Butler worked in Memphis.

Epperson also explained how U.S. mail arrives at and moves through the FedEx hub. Initially, USPS collects mail that has been deposited by customers at drop boxes, post offices, and home addresses. That mail is then sorted by size and destination at a United States Post Office. As relevant here, letters in a regular size envelope, like a birthday card, are sorted into containers known as "letter tray[s]." DE 82, Trial Tr., PageID 279. When a letter tray is full, it is placed into a plastic sleeve that covers the outside of the tray and sealed with a plastic "band" or "strap" that goes around the middle of the tray. *Id.* at 280. The outer sleeve of the letter tray, in turn, is labeled with a destination code.

The letter trays are then sent to a third party that packs them into larger containers suitable for air transportation. Once packed, the transport containers are transferred to FedEx in the origin city and placed on a FedEx aircraft. FedEx then flies the containers to its hub in Memphis. At the

---

secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined under this title or imprisoned not more than five years, or both.

hub, FedEx unloads the containers from its aircraft and removes the letter trays stacked inside. Those trays are then placed onto a system of conveyor belts to be sorted by destination. Although the conveyor belts also carry and sort FedEx packages (*i.e.*, non-U.S. mail), Epperson explained that the only FedEx customer using letter trays is USPS, and the letter trays contain only U.S. mail.

After the letter trays have been sorted by their destination, they are once again packed inside larger transport containers. The transport containers are placed on a FedEx aircraft and flown to the destination city. At the destination city, a third-party handler removes the letter trays from the transport containers and delivers the letter trays to a USPS facility for processing. It is only then that the letter trays are opened by USPS employees and their contents prepared for manual delivery by a mail carrier. Epperson explained that a letter tray should never be opened while in the custody of FedEx.

The government's next witness was Krista McKessy, a senior security specialist at FedEx. McKessy testified that, in March 2015, her office received reports of an uptick in greeting cards being pilfered in one area of the FedEx hub. The greeting cards, McKessy explained, were popular targets because they tend to be brightly colored and contain money or gift cards. In response to the reports of pilfering, McKessy reviewed surveillance footage of the affected areas inside the FedEx hub. That footage, she testified, showed Butler unsealing USPS letter trays by "popping the band[s]" off them. DE 84, Trial Tr., PageID 320. She also testified that Butler could be seen rummaging through the trays' contents. McKessy had Butler removed from his post and brought to an interview room.

Jerome Hudson was the government's next witness. Hudson, also a senior security specialist at FedEx, reviewed the same surveillance footage as McKessy and then interviewed Butler. In addition to echoing McKessy's opinion that the surveillance footage showed Butler

unsealing USPS letter trays and rifling through their contents, Hudson testified that Butler admitted to opening five pieces of U.S. mail. He also testified that Butler completed a written statement in which he admitted to opening two pieces of U.S. mail.

The government's next witness was Gregory Newberry. Newberry, a United States Postal Inspector, reviewed the same surveillance footage as the other witnesses and, like the others, testified that it showed Butler unsealing USPS letter trays. Newberry also participated in the interview of Butler. He testified that, during the interview, Butler admitted to "popp[ing] the bands on the mail trays" and "open[ing] up five pieces of mail." *Id.* at 414–15. Newberry also read a separate written statement in which Butler admitted to popping bands off USPS letter trays, looking through their contents, and then opening five letters containing personal correspondence. The video footage of Butler's interview and copies of his written statements were displayed in the courtroom and entered into the record as exhibits.

Finally, two of Butler's former coworkers, Kenneth Stephens and Hector Guzman, were called as witnesses for the government. Stephens testified that he saw Butler unseal USPS letter trays and open the mail contained inside. He said of Butler: "Every once in a while he'll open a tray, open the mail and look through it. Sometimes he'll put it back. Sometimes he'll keep it." *Id.* at 436. Stephens confirmed that he had seen Butler open multiple envelopes removed from the USPS letter trays. Guzman likewise testified that he had seen Butler take "bands off the [USPS letter trays]" and then open "three to five . . . envelopes." *Id.* at 444–45.

At the close of the government's case, Butler moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court denied his motion from the bench. Butler did not testify or call any witnesses. The jury returned a guilty verdict the next day. Two

weeks later, Butler renewed his motion for a judgment of acquittal. The district court again denied the motion. Butler timely appeals.

## II.

Butler raises three issues on appeal. First, Butler argues that the district erred in denying his motion for a judgment of acquittal. Specifically, he contends that there was insufficient evidence for a jury to find that he opened U.S. mail—as opposed to non-U.S. mail like a FedEx package—or that any U.S. mail he may have opened was previously in a United States Post Office. Butler also contends that the government presented insufficient evidence for a jury to find that any letters he may have opened were traveling to a real person or address. Second, Butler argues that, as used in 18 U.S.C. § 1702, the term "opens" is unconstitutionally vague. Finally, Butler argues that the district court abused its discretion by denying his request to instruct the jury on a lesser-included offense. We address each issue in turn.

## A.

Butler first argues that the trial evidence was insufficient to establish that he obstructed correspondence by opening U.S. mail. A defendant challenging the sufficiency of the evidence supporting his conviction "bears a very heavy burden." *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)). When reviewing an insufficient evidence claim on appeal, we must affirm a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[W]e do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury," *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994), and

the evidence need not "remove every reasonable hypothesis except that of guilt," *Spearman*, 186

F.3d at 746 (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)).

To convict Butler of obstructing correspondence by opening U.S. mail, the parties agree

that the government was required to prove the following elements beyond a reasonable doubt:

(A)  First, that Mr. Butler knowingly opened any letter, postal card, or package;

(B)  Second, that the letter, postal card, or package had been or was in any post office, any authorized depository for mail matter, or in the custody of any letter or mail carrier; and

(C)  Third, that Mr. Butler opened the letter, postal card, or package before it was delivered to the person to whom it was addressed.

DE 72, Jury Instructions, PageID 195.  A defendant violates § 1702 if he opens U.S. mail at any

point between its origin and destination, even if the mail is no longer in the physical custody of

USPS.  *See United States v. Childs*, 598 F.2d 169, 172 (D.C. Cir. 1979) ("[T]he required taking

may occur at any time before the letter reaches the addressee, regardless of whether it was in the

physical custody of the postal service or was on deposit in an authorized mailbox when

taken . . . ."); *see also United States v. Wade*, 364 F.2d 931, 934 (6th Cir. 1966) (holding that

§ 1702 extends federal protection over mail from the time it enters USPS custody "until manually

delivered to the addressee").

Here, a rational juror could have found the above elements satisfied by two facts shown at

trial.  First, there is uncontroverted evidence that Butler unsealed multiple USPS letter trays by

removing their plastic bands.  McKessy, Hudson, and Newberry each testified that Butler could be

seen unsealing USPS letter trays in the surveillance footage submitted to the jury, and Butler

admitted to doing so in both his interview and written statements.  Stephens and Guzman also

testified that they witnessed Butler unsealing USPS letter trays.  Second, there is uncontroverted

evidence that, after unsealing the USPS letter trays, Butler opened multiple envelopes from the

trays. He admitted to opening between two and five pieces of mail in both his interview and written statements. Stephens and Guzman also testified that they witnessed Butler open multiple pieces of mail.

The jury, in turn, was entitled to find that any letter Butler opened from inside a USPS letter tray was U.S. mail that had passed through a United State Post Office. As Epperson testified, USPS letter trays are assembled in United States Post Offices. That means that the trays and the letters contained therein must have passed through a United States Post Office before reaching the FedEx hub in Memphis. And the USPS letter trays, Epperson explained, are sealed, contain only U.S. mail, and cannot lawfully be opened prior to reaching their destination city. It thus follows that any USPS letter tray that passes through the FedEx hub is filled exclusively with U.S. mail that has been inside a United States Post Office. When combined with the evidence that Butler opened multiple letters he retrieved from inside USPS letter trays, there was sufficient evidence from which a rational juror could find that Butler violated § 1702.[2]

Butler nevertheless counters that there was insufficient evidence to support a conviction because the government failed to show that the pieces of U.S. mail that Butler opened were addressed to real persons or entities. Section 1702 contains no express requirement that the addressee of obstructed U.S. mail be a real rather than fictitious person or entity; it only requires that the mail be obstructed "before it has been delivered to the person to whom it was directed." *Cf. Maxwell v. United States*, 235 F.2d 930, 932 (8th Cir. 1955) ("We can think of no sound reason

---

[2] Butler argues that the government cannot show that the specific letters he opened were U.S. mail because their envelopes and postage were never recovered. In doing so, he focuses almost exclusively on one piece of mail in a pink envelope that he can be seen opening on the surveillance footage provided to the jury. Butler maintains that there is no way to know whether the pink envelope was a piece of U.S. mail since the envelope was never recovered and the surveillance footage does not conclusively show where Butler retrieved it from. That argument is dubious, at best, given that Guzman testified to seeing Butler remove the pink envelope from a USPS letter tray. Nevertheless, because a rational juror could find that Butler opened multiple *other* pieces of U.S. mail based on the evidence that he opened letters removed from USPS letter trays, we need not address whether the less robust evidence of the pink envelope's origins would alone be sufficient to sustain the jury's verdict.

for not giving to the statute the full meaning which its language imports . . . .").  We can find no case requiring the government to prove, as an element of an offense charged under § 1702, that the addressee was a real person.

Butler instead relies on an old case from the Southern District of New York, *United States v. Grieco*, 187 F. Supp. 597 (S.D.N.Y. 1960), to support the proposition that a conviction under § 1702 requires proof of a real addressee.  But *Grieco*'s reasoning is neither binding nor relevant to the facts of the present case.  In *Grieco*, USPS investigators responded to reports that a hotel bellhop was allegedly pilfering guests' mail.  187 F. Supp. at 597.  As part of its investigation, USPS "caused a decoy letter to be mailed to a fictitious person at the hotel."  *Id.*  The defendant was arrested after being found with two marked bills that had been sent in the decoy letter.  *Id.* at 598.  The district court dismissed the indictment, however, finding that, "[w]here, as here, there is no addressee, the crime charged is impossible of commission."  *Id.* at 599.  That is, the court reasoned, "there can be no taking of a letter, which has been in a post office, before delivery to the person to whom it was directed, when there exists no such person."  *Id.*

The facts of the present case are distinguishable from those in *Grieco*.  While the court in *Grieco* was presented with affirmative evidence that the addressee was fictional and that the pilfered mail was never intended to move through the postal system as actual "correspondence," 18 U.S.C. § 1702, no such evidence was presented here.  To the contrary, the government presented evidence that the envelopes contained in the USPS letter trays had necessarily been processed by USPS in the normal course of business.  And there was no evidence from which to infer that the types of U.S. mail opened by Butler—that is, brightly colored birthday and greeting cards—were likely to have been addressed to fictitious persons.  In the absence of any evidence to the contrary,

a rational juror could have inferred that U.S. mail opened by Butler was addressed to real persons. Accordingly, the district court did not err in denying Butler's motion for a judgment of acquittal.

B.

Next, Butler contends that § 1702 is unconstitutionally vague because it does not expressly define the meaning of "opens" as it used in the statute. We apply *de novo* review to the legal question of whether a statute is unconstitutionally vague. *United States v. Hart*, 635 F.3d 850, 856 (6th Cir. 2011).

"A statute is void for vagueness where it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or is so indefinite that it encourages arbitrary and erratic arrests and convictions.'" *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 340–41 (6th Cir. 2007) (quoting *Colautti v. Franklin*, 439 U.S. 379, 390 (1979)). Butler "bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (quoting *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001)). "Even if a statute might be vague as it relates to other, hypothetical defendants, courts will not entertain vagueness challenges on behalf of a defendant whose conduct clearly falls within the ambit of the statute." *Id.*

Butler's vagueness challenge is meritless. The word "opens" in § 1702 "has an ordinary meaning that is not subject to ambiguity." *Hart*, 635 F.3d at 858. In other words, the statute provides "a person of ordinary intelligence" with "fair notice" of the conduct the law proscribes. *Northland*, 487 F.3d at 340. Butler argues that the word "opens" has many definitions, including to "unstop" or "allow[] passage without obstruction," which comprise some of the actual job duties FedEx employees are expected to perform. However, putting aside its questionable plausibility,

Butler's argument is merely hypothetical because Butler does not—indeed, cannot—contend that he "did not have fair notice that his conduct" was prohibited. *See United States v. Hill*, 167 F.3d 1055, 1063–65 (6th Cir. 1999) (holding that a statute was not unconstitutionally vague as applied to the defendant despite hypothetical scenarios where the statute might have been vague as applied to other conduct). The evidence adduced at trial demonstrated that Butler unsealed USPS letter trays, searched within them for brightly colored envelopes, and then proceeded to physically manipulate the envelopes to allow exposure and removal of their contents, either by removing the flap or unsealing them. Butler's conduct "clearly falls within the ambit of the statute." *Kernell*, 667 F.3d at 750.

## C.

Finally, Butler challenges the district court's denial of his request to instruct the jury on a lesser-included offense. Specifically, Butler contends that the district court ought to have instructed the jury as to 18 U.S.C. § 1701, which prohibits individuals from "knowingly and willfully obstruct[ing] or retard[ing] the passage of mail." We review the district court's denial of Butler's request for an abuse of discretion. *See United States v. LaPointe*, 690 F.3d 434, 439 (6th Cir. 2012).

"A defendant is entitled to a lesser-included offense instruction if '(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser.'" *Id.* at 439 (quoting *United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001)). The district court found that the first three elements were satisfied, but it rejected Butler's request based on its finding that Butler did

not satisfy the fourth element. Butler disputes that finding. He claims that, based on the trial evidence, the jury could have concluded that Butler did not "open" any of the envelopes but did willfully obstruct their delivery.

The district court correctly found no factual dispute that would have permitted a jury to convict under § 1701 but not § 1702. As the district court explained, there is "no evidence that [Butler] took one of those containers and put it in a trashcan or anything that would obstruct or retard the delivery of the mail. The question is whether he opened [the] envelopes . . . ." DE 85, Trial Tr., PageID 486–87. On appeal, Butler again fails to point to any evidence that would create a factual dispute concerning whether he obstructed delivery of the envelopes without also opening them to search their contents. *See Sansone v. United States*, 380 U.S. 343, 349–50 (1965) ("[A] lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses."); *id.* at 350 ("A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense."). Accordingly, the district court did not abuse its discretion in denying Butler's request to provide a lesser-included offense instruction.

III.

Based on the forgoing, we affirm.